FILED
2023 Feb-27  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LOUIS DEJUAN OWENS,** ] | |
| ] | |
| Movant, ] | |
| ] | |
| v. ] | Case No.: 2:22-cv-8032-ACA |
| ] | |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| Respondent. ] | |

## MEMORANDUM OPINION

In August 2022, Movant Louis DeJuan Owens filed a 28 U.S.C. § 2255 motion to vacate sentence, asserting two claims, one of which has seven subparts:

(1) the court violated Mr. Owens' due process and jury trial rights by:

  a. erroneously applying *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny;

  b. applying incorrect Eleventh Circuit precedent;

  c. considering evidence under 18 U.S.C. § 3661, which is unconstitutional;

  d. upholding erroneous precedent;

  e. failing to apply the rule of lenity to § 3661;

  f. interpreting an ambiguous plea agreement in the government's favor;

  g. accepting Mr. Owens' plea even though it was not knowing and voluntary; and

(2) the court erred in finding him to be a career offender because one of his predicate offenses no longer qualifies as a crime of violence.

(Doc. 1 at 13–24; *see* doc. 8 at 2). The government, while asserting in half of one sentence that some of these claims are procedurally barred, primarily argues that Mr. Owens' claims are meritless and should be denied without a hearing.[1] (Doc. 5 at 6–13). Because the government has not presented actual argument about any procedural bar, the court will address Mr. Owens' claims on the merits. And because none of Mr. Owens' claims have any merit, the court **WILL DENY** the § 2255 motion and **WILL DENY** Mr. Owens a certificate of appealability.

I.     BACKGROUND

A grand jury indicted Mr. Owens on one count of possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), on or about June 24, 2019 ("Count One") and one count of possession with intent to distribute fifty grams or more of methamphetamine, in violation of § 841(a)(1), (b)(1)(A), on or about November 1, 2019 ("Count Two"). *United States v. Owens*, case no. 2:20-cr-166-ACA-SGC-1, doc. 1 at 1–2 (N.D. Ala. June 19, 2020).[2] Mr. Owens later entered a plea agreement with the government, in which he agreed to plead guilty to Count Two in exchange for the government

---

[1] The government also devotes a large part of its brief to a claim of ineffective assistance that Mr. Owens did not raise. (*See* doc. 5 at 6–8). Although Mr. Owens' reply brief then made arguments about ineffective assistance of counsel (doc. 8 at 4–8), he did not amend his § 2255 motion to assert any ineffective assistance claims, *see* Fed. R. Civ. P. 15(a)(2). The court will not address any claims that Mr. Owens did not actually assert in his § 2255 motion. *See, e.g.*, *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017).

[2] The court will cite documents from Mr. Owens' criminal proceeding as "*Owens* doc. ___."

dismissing Count One and recommending that he receive an acceptance of responsibility reduction in his offense level and a sentence within the advisory guidelines range. (Doc. 5-1 at 1, 4). The plea agreement specified that Count Two carried a statutory sentencing range between ten years' and life imprisonment. (*Id.* at 2).

The plea agreement also set forth the factual basis for the plea. (*Id.* at 2–4). It stated that in October 2019, after agents made three controlled buys of several ounces of methamphetamine from Mr. Owens, they set up a final controlled buy in November 2019. (*Id.* at 2–3). At the final controlled buy, state troopers stopped Mr. Owens and took him into custody. (Doc. 5-1 at 3). A search of his car revealed 2,812 grams of "suspected methamphetamine," drug paraphernalia, and over $7,000. (*Id.* at 3–4). Analysis of some of the substance taken from the car confirmed that the part tested contained about 900 grams of methamphetamine. (*Id.* at 3). The plea agreement further stated that Mr. Owens "acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed." (*Id.* at 4). The agreement provided that it was not meant to prohibit the court "from considering any other acts and factors which may constitute or relate to relevant conduct." (*Id.* at 10).

Finally, the plea agreement stated that "it is the Court's duty to impose sentence upon the defendant and . . . any sentence recommended by the government

is **NOT BINDING UPON THE COURT**, and . . . the Court need not accept the government's recommendation." (Doc. 5-1 at 7) (emphasis in original). Mr. Owens initialed each page and signed after the factual basis as well as at the end of the plea agreement. (*Id.* at 4, 14).

At the change of plea hearing, the court reviewed the statutory sentencing range with Mr. Owens. (*Owens* doc. 44 at 9–10). The court confirmed that Mr. Owens understood that no one knew yet what Mr. Owens' advisory guidelines range might be and that the court did not have to follow any sentencing recommendations from either defense counsel or the government. (*Id.* at 10, 17).

Mr. Owens' presentence investigation report ("PSR") recommended finding that the offense involved a converted drug weight of 59,921 kilograms, derived by adding all the drugs from the June 2019 offense (to which Mr. Owens did not plead guilty) to all the suspected drugs from the November 2019 offense (to which he did plead guilty). (*See Owens* doc. 30 at 6 ¶ 10 (explaining that the June 2019 offense involved "approximately four pounds of methamphetamine"); *id.* at 7 ¶ 13 (explaining that "[t]he suspected methamphetamine" from the June 2019 offense weighed 1,840.5 grams, which is about four pounds); *id.* at 7 ¶ 15 (explaining that the November 2019 search of Mr. Owens' car revealed 2,812 grams of "suspected methamphetamine"); *id.* at 9 ¶ 24 (using the 1,840.5 grams of methamphetamine from June 2019 and the 2,812 of suspected methamphetamine to reach the total drug

quantity)). As a result, the PSR recommended a base offense level of 36 under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(2) (2018). (*Id.*).

The PSR also recommended finding that Mr. Owens was a career offender, under U.S.S.G. § 4B1.1, because he had a felony conviction for unlawful distribution of a controlled substance and a felony conviction for second degree assault. (*Owens* doc. 30 at 10 ¶ 30; *see also id.* at 12–13 ¶ 38, 17–19 ¶ 42).

Mr. Owens filed several objections to the PSR. (*Owens* doc. 24). The court sustained most of the objections. (*See Owens* doc. 45 at 3, 25–26). Of relevance to this § 2255 motion, the court found that the government had not carried its burden of establishing that the offense involved 59,921 kilograms of converted drug weight. (*Id.* at 25–26). The court found instead that the offense involved 1,810 grams of "ice" and 1,840.5 grams of methamphetamine, for a total of 39,899 kilograms of converted drug weight. (*Id.* at 10, 25–26; *see also Owens* doc. 30 at 7 ¶¶ 12–13, 9 ¶ 24). The reduction in the amount of drugs did not affect the base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2) (calling for a base offense level of 36 when the offense involves at least 30,000 but less than 90,000 kilograms of converted drug weight). However, because Mr. Owens was a career offender, his adjusted offense level became 37. (*See Owens* doc. 30 at 10 ¶ 30); U.S.S.G. § 4B1.1(b). With a reduction for acceptance of responsibility, Mr. Owens' total offense level was 34. (*Owens* doc. 30 at 11 ¶ 33). And because of his career offender status, his criminal

history category was VI, resulting in an advisory guidelines range of 262 to 327 months' imprisonment. (*Owens* doc. 32 at 1); U.S.S.G. § 4B1.1(b). The court sentenced Mr. Owens to 290 months' imprisonment. (*Owens* doc. 45 at 33).

Mr. Owens appealed the court's judgment. (*Owens* doc. 34). Appellate counsel moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), and the Eleventh Circuit granted that motion and affirmed Mr. Owens' conviction and sentence. (Doc. 5-2 at 2).

## II. DISCUSSION

### 1. Claim One

Mr. Owens' first claim, which he separates into seven subclaims, really asserts three sets of subclaims: (1) the Eleventh Circuit and this court have misinterpreted the Supreme Court's *Apprendi* line of cases, and courts do not need to follow incorrectly decided cases (doc. 1 at 13–19); (2) § 3661 is unconstitutional because it permits a court to make impermissible factfindings increasing the sentencing range (*id.* at 17–20); and (3) Mr. Owens should not have been bound by his plea agreement and guilty plea because he did not understand that he would be held responsible for as much methamphetamine as the court found (*id.* at 20–24).

Mr. Owens' first set of subclaims is meritless. As an initial matter, Mr. Owens does not identify which decisions are incorrect or how they incorrectly applied the *Apprendi* line of cases. (Doc. 1 at 13–19). But even if he had identified specific

decisions that incorrectly applied the *Apprendi* line of cases, this court has no power to disregard those decisions based on its own determination that they are wrong. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

Mr. Owens' second set of subclaims also fails on the merits. The *Apprendi* decision holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The same is true of any fact that would increase the mandatory minimum sentence for a crime. *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Section 3661, the statute Mr. Owens challenges here, provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. By its plain language, the statute permits a court to receive and consider information in setting a sentence within the statutory limits; it does not permit a court to make factual findings that would alter the otherwise-applicable statutory sentencing range. *See id.*; *see also Pepper v. United States*, 562 U.S. 476, 488 (2011) (explaining that § 3661 is the codification of the longstanding principle that American courts have "a wide discretion in the sources and types of evidence used to assist [the sentencing

court] in determining the kind and extent of punishment to be imposed *within limits fixed by law*") (quotation marks omitted) (emphasis added).

Mr. Owens's final set of subclaims, likewise, does not warrant any relief. In this subset, Mr. Owens asserts that his plea agreement was ambiguous because it promised to dismiss Count One despite the fact that the court could sentence him for the conduct underlying that count, and his guilty plea was not knowing and voluntary because he did not received notice that he would be held responsible for 39,899 kilograms of converted drug weight. (Doc. 1 at 20–24). But the plea agreement specified that "these facts do not constitute all of the evidence of each and every act that the defendant . . . may have committed"; that it did not prohibit the court "from considering any other acts and factors which may constitute or relate to relevant conduct"; and that the recommendations of the parties were not binding on the court. (Doc. 5-1 at 4, 7, 10). As for Mr. Owens' guilty plea, the court confirmed with Mr. Owens, under oath, that he understood that his advisory guidelines range might be different from anything he had discussed with his attorney or that the government might recommend. (*Owens* doc. 44 at 9–10, 17). Nothing in the record shows that the plea agreement was ambiguous or that Mr. Owens' plea was anything but knowing and voluntary.

2. Claim Two

In his second claim, Mr. Owens contends that, based on intervening cases from the Supreme Court and Eleventh Circuit, his conviction for second degree assault no longer qualifies as a crime of violence supporting his designation as a career offender. (Doc. 1 at 24; doc. 8 at 7).

This claim is foreclosed by *Spencer v. United States*, 773 F.3d 1132 (2014) (en banc). In *Spencer*, the Eleventh Circuit held that the court lacks authority to review a prisoner's sentence "unless the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 1138 (cleaned up). And "[a] prisoner may challenge a sentencing error as a 'fundamental defect' on collateral review" only "when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *Id.* at 1139. This is because in general, a sentencing error such as erroneously finding a defendant to be a career offender still results in a lawful sentence: "[A]ny miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory. If the district court were to resentence [the movant], the district court could impose the same sentence again." *Id.* at 1140.

Mr. Owens does not allege that he is actually innocent or that his assault conviction has been vacated. Accordingly, the court lacks the authority to consider this claim.

## III.   CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Cases. The court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Owens' claims do not satisfy either standard. The court **WILL DENY** a certificate of appealability.

## IV.   CONCLUSION

The court **WILL DENY** Mr. Owens's § 2255 motion. The court **WILL DENY AS MOOT** Mr. Owens's request for appointment of an attorney. (Doc. 1 at 25). The court **WILL DENY** Mr. Owens a certificate of appealability.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this February 27, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE